## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE CORMEDIX INC. DERIVATIVE LITIGATION | Case No. 2:21-cv-18493-JXN-LDW<br><br>(Consolidated with Case No. 23-cv-00150 and Case No. 23-cv-00406) |

**DELAWARE PLAINTIFF AND PROPOSED INTERVENOR ROBERT JHOE'S OPPOSITION TO MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................................... ii

INTRODUCTION .......................................................................................................................... 1

STATEMENT OF RELEVANT FACTS ....................................................................................... 4

ARGUMENT .................................................................................................................................. 6

   I.   THE DELAWARE PLAINTIFF IS ENTITLED TO OBJECT TO PRELIMINARY APPROVAL OF THE SETTLEMENT ................................................................................. 6

   II.   THE COURT SHOULD DENY THE PRELIMINARY APPROVAL MOTION TO ALLOW FOR A DECISION ON THE INTERVENTION MOTION AND MOTION TO DISMISS ................................................................................................................................. 8

      A.   If the Court Enters an Order on the Intervention Motion in Delaware Plaintiff's Favor, Consideration of the Proposed Settlement Would Be Unnecessary .............................. 8

   III.   ALTERNATIVELY, SHOULD THE COURT CONSIDER THE PRELIMINARY APPROVAL MOTION NOW, THE COURT SHOULD DENY PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT ....................................................... 10

      A.   The Proposed Settlement Seeks to Prematurely Release Claims Without Proof of Recoverable Damages ................................................................................................. 11

      B.   Allowing Preliminary Approval to Proceed and Notice to be Disseminated Would Waste the Court's and CorMedix's Resources ............................................................ 12

CONCLUSION ............................................................................................................................. 13

# **TABLE OF AUTHORITIES**

**Cases**

*Aliano v. CVS Pharmacy, Inc.*,
    Case No. 16-cv-2624, 2018 U.S. Dist. LEXIS 85986 (E.D.N.Y. May 21, 2018) .............. 7

*Bell Atl. Corp v. Bolger*,
    2 F.3d 1304 (3d Cir. 1993)................................................................................................ 12

*Brehm v. Eisner*,
    746 A.2d 244 (Del. 2000) .................................................................................................. 8

*Bushansky v. Armacost*,
    Case No. 12-cv-01597, 2014 U.S. Dist. LEXIS 88072 (N.D. Cal. June 25, 2014).......... 12

*Glover v. Conn. Gen. Life Ins. Co.*,
    Case No. 3:16-cv-00827, 2024 U.S. Dist. LEXIS 158508 (D. Conn. Sept. 4, 2024)..... 6, 7

*Lanham v. Katz*,
    Case No. 23-cv-00507, 2024 U.S. Dist. LEXIS 73027 (D. Colo. Apr. 22, 2024).............. 7

*In re Literary Works in Elec. Databases Copyright Litig.*,
    654 F.3d 242 (2d Cir. 2011)............................................................................................... 7

*Lloyd v. Gupta*,
    Case No. 3:15-cv-04183, 2016 U.S. Dist. LEXIS 96166 (N.D. Cal. July 22, 2016).......... 7

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    Case No. 05-md-1720, 2012 U.S. Dist. LEXIS 153637 (E.D.N.Y. Oct. 24, 2012) ........... 7

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    330 F.R.D. 11 (E.D.N.Y. 2019)......................................................................................... 7

*In re Platinum & Palladium Commodities Litig.*,
    Case No. 10-cv-03617, 2014 U.S. Dist. LEXIS 96457 (S.D.N.Y. July 15, 2014) ............. 7

*In re Synchronoss Techs., Inc. S'holder Derivative Demand Refused Litig.*,
    Case No. 20-07150, 2021 U.S. Dist. LEXIS 238014 (D.N.J. Dec. 13, 2021) ............. 3, 10

*Tenuto v. Transworld Sys., Inc.*,
    Case No. 99-4228, 2001 U.S. Dist. LEXIS 17694 (E.D. Pa. Oct. 31, 2001)...................... 2

*Thieffry v. Waldis*,
    Case No. 17-7173, 2018 U.S. Dist. LEXIS 87577 (D.N.J. May 24, 2018) ....................... 6

*Trombley v. Nat'l City Bank*,
    759 F. Supp. 2d 20, 22 (D.D.C. 2011) .............................................................................. 7

*Tuttle v. Audiophile Music Direct, Inc.*,
    Case No. C22-1081, 2023 U.S. Dist. LEXIS 42035 (W.D. Wash. Mar. 13, 2023)...... 7, 12

*In re United Telecomms., Sec. Litig.*,
    Case No. 90-2251, 1993 U.S. Dist. LEXIS 4749 (D. Kan. Mar. 4, 1993)................ 3, 9, 11

**Statutes**

8 *Del. C.* § 220 ................................................................................................................. 3, 6, 9

**Rules**

Fed. R. Civ. P. 23.1 ............................................................................................................ 12

Robert Jhoe (the "Delaware Plaintiff"), a plaintiff in a parallel stockholder derivative action pending in the Court of Chancery of the State of Delaware, captioned *Jhoe v. Todisco, et al.*, C.A. No. 2025-1367-PAF (Del. Ch.) (the "Delaware Chancery Action"), and proposed intervenor in the above-captioned action (the "Action") (*see* ECF No. 30), respectfully submits this Memorandum of Law in opposition to plaintiffs Isaac Desalvo ("Desalvo"), Melissa Voter ("Voter"), and Rose Scullion's ("Scullion") (collectively, the "New Jersey Plaintiffs") motion for preliminary approval of settlement (ECF No. 42) ("Preliminary Approval Motion").[1]

## INTRODUCTION

As set forth in his prior submissions to the Court, Delaware Plaintiff has requested that the Court defer any consideration or decision regarding the Preliminary Approval Motion until the Court first rules on his Motion to Intervene and Stay (ECF No. 30) (the "Intervention Motion"), and until the Delaware Court of Chancery rules on Defendants' substantive motion to stay or dismiss the Delaware Chancery Action, with briefing due to begin on February 16, 2026 (the "Motion to Dismiss"). ECF Nos. 39, 46. Awaiting decisions on these threshold motions prior to considering the Preliminary Approval Motion would serve the best interests of CorMedix, Inc. ("CorMedix" or the "Company") and its shareholders and would save judicial and litigant resources, including, in particular, the substantial costs to be incurred in connection with disseminating notice to CorMedix stockholders. The Intervention Motion, and the Memoranda of Law filed in support thereof, raise serious issues concerning the adequacy of the New Jersey Plaintiffs and the necessity of a stay of the Action. A favorable decision on the Intervention Motion would result in a stay of this Action to allow the better-pled Delaware Chancery Action to proceed

---

[1] References to "Prelim. Motn." herein are to the Memorandum in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement (ECF No. 42-1).

1

on the merits, circumventing the need for any decision on the proposed settlement contemplated in the Preliminary Approval Motion (the "Proposed Settlement"). A decision on the substantive Motion to Dismiss in the Delaware Chancery Action would likewise obviate the need to decide the Preliminary Approval Motion.

Nonetheless, should the Court decide to consider the Preliminary Approval Motion before the Intervention Motion or Motion to Dismiss, the Court should deny preliminary approval because New Jersey Plaintiffs have not submitted (or themselves obtained) information sufficient for the Court to evaluate whether the Proposed Settlement meets the standards for preliminary approval.[2] Indeed, the Proposed Settlement suffers from the obvious deficiency that *no information* regarding damages or the value of the claims sought to be released is provided – which is half of the relevant equation.[3] This is because such information does not yet exist.

The New Jersey Plaintiffs stayed the Action for almost four years pending the related securities class action captioned *In re CorMedix Inc. Securities Litigation*, Case No. 2:21-cv-14020-JXN-CLW (D.N.J.) (the "Securities Class Action"), stating that case bore directly on the manner in which the Action should proceed (ECF No. 20). The New Jersey Plaintiffs' consolidated complaint alleges that the Company's out-of-pocket damages arising from the Securities Class Action constitute most, if not all, of the damages in *this* Action. Yet now, before the Securities Class Action has even gone through discovery, let alone gone to trial or settled (allowing for the

---

[2] On preliminary approval, the Court should "determine[] whether the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies . . . and whether it appears to fall within the range of possible approval." *See Tenuto v. Transworld Sys., Inc.*, Case No. 99-4228, 2001 U.S. Dist. LEXIS 17694, at *3 (E.D. Pa. Oct. 31, 2001).

[3] *See In re AMC Ent. Holdings, Inc. S'holder Litig.*, Case No. 2023-0215, 2023 Del. Ch. LEXIS 329, at *34 (Del. Ch. Aug. 11, 2023) (in evaluating derivative settlements, the Court is tasked with "evaluating the 'give' and the 'get' of the proposed settlement: the settlement class releases, or 'gives' up, claims and, in exchange, 'gets' consideration.").

2

proper assessment of damages), the New Jersey Plaintiffs seek to prematurely release all claims for all plaintiffs and CorMedix stockholders with no cash payment to the Company.

While it is true that some derivative cases settle for corporate governance reforms only, this Proposed Settlement is inadequate and cannot have been the product of informed decision making as the Securities Class Action has not been resolved and, thus, the New Jersey Plaintiffs cannot possibly ascertain the value of the claims they are seeking to release.[4] It is no surprise that the New Jersey Plaintiffs submit no evidence of the actual or potential damages in the Action. The New Jersey Plaintiffs reviewed no substantive documents from the Securities Class Action, nor any other confirmatory discovery to support the Proposed Settlement.[5] If the Court considers the Preliminary Approval Motion now, it is critical that the Court apply proper scrutiny[6] and deny it before substantial costs have been incurred disseminating notice to CorMedix stockholders.

---

[4] *See In re United Telecomms., Sec. Litig.*, Case No. 90-2251, 1993 U.S. Dist. LEXIS 4749, at *9 (D. Kan. Mar. 4, 1993) (holding that the amount of damages in a derivative case is "contingent upon the outcome of the pending [securities] class action," including "any judgment the company might be ordered to pay in the [securities] class action.").

[5] Seemingly, the only non-public documents the New Jersey Plaintiffs reviewed prior to entering into the Proposed Settlement are the documents produced to the Delaware Plaintiff in response to the books and records demand the Delaware Plaintiff made on the Company pursuant to 8 *Del. C.* § 220 ("Section 220"). Prelim. Motn. at 18. Interestingly, the New Jersey Plaintiffs criticized the substance of these same documents that they now seek to rely on as support for the Proposed Settlement in their Opposition to Proposed Intervenor's Motion to Intervene. *See* ECF No. 35 at 8.

[6] As acknowledged by this Court, due to the "unique characteristics of shareholder derivative actions, and the potential for abuse and collusion inherent in cases that involve large attorney's fee awards," the Court must "carefully review the settlement terms to examine whether the specific corporate reforms agreed to by the parties as settlement terms [] result in a fair settlement to the corporation." *In re Synchronoss Techs., Inc. S'holder Derivative Demand Refused Litig.*, Case No. 20-07150, 2021 U.S. Dist. LEXIS 238014, at *15 (D.N.J. Dec. 13, 2021).

## STATEMENT OF RELEVANT FACTS

Pending before this Court are the Securities Class Action and the Action. On July 22, 2021, the Securities Class Action was filed against the Company and certain of its executive officers for violations of federal securities laws. On April 22, 2024, plaintiff in the Securities Class Action filed a Third Amended Consolidated Class Action Complaint, asserting causes of action for violations of federal securities laws for certain materially false and misleading statements made between October 16, 2019 and August 8, 2022. Securities Class Action, ECF No. 97. On August 19, 2025, the Court issued an opinion denying the defendants' motion to dismiss the Securities Class Action, holding, in relevant part, that the plaintiff adequately alleged that the defendants failed to disclose certain information to the public, "which ma[de] the [defendants'] statements misleading." *Id.*, ECF No. 130 at 29. Following this decision, on November 12, 2025, the parties in the Securities Class Action informed the Court that they were participating in a mediation in an effort to settle the litigation. ECF No. 139. Delaware Plaintiff's counsel also attended the mediation. On November 19, 2025, the parties in the Securities Class Action informed the Court that the mediation was unsuccessful in resolving the matter. ECF No. 140. On December 17, 2025, the plaintiffs in the Securities Class Action filed the Fourth Amended Consolidated Class Action Complaint, which the defendants answered on January 2, 2026. *Id.*, ECF Nos. 144, 145.

On October 13, 2021, the first of the three derivative actions comprising this consolidated Action was filed in this Court, based largely on the allegations contained in the Securities Class Action, captioned *Voter v. Baluch, et al.*, Case No. 2:21-cv-18493 (D.N.J.) (the "*Voter* Action"). Shortly thereafter, Plaintiff Voter agreed to a stipulated stay of her case until "the Securities [Class Action] is dismissed in its entirety," or "the motion to dismiss the Securities [Class Action] is denied," which the Court granted. *Voter* Action, ECF No. 8. On March 16, 2022, the Court issued an order administratively closing the *Voter* Action due to inactivity. *Id.*, ECF No 14.

4

Over a year after the *Voter* Action was filed, on January 12, 2023, Plaintiff DeSalvo filed a substantially similar derivative action, captioned *Desalvo v. Costa, et al.*, Case No. 2:23-cv-00150 (D.N.J.). Less than two weeks later, on January 25, 2023, Plaintiff Scullion filed an almost identical complaint in the action captioned *Scullion v. Baluch, et al.*, Case No. 2:23-cv-00406 (D.N.J.). The New Jersey Plaintiffs subsequently asked the Court to reopen the *Voter* Action solely for the purposes of consolidating the cases, appointing leadership, and entering *another* stay under the same terms set forth in the *Voter* Action, which the Court did. ECF No. 20 (the "Stay Order"). Notably, the Stay Order acknowledged that "there is an overlap between the facts and circumstances alleged in the Derivative Actions and the Securities [Class Action], including the relevance of many of the same documents and witnesses." *Id.* at 4. On November 10, 2025, the New Jersey Plaintiffs filed a Verified Consolidated Shareholder Derivative Complaint. *Id.*, ECF No. 27.

After doing nothing to advance the Action for years, on November 18, 2025, the parties to the Action participated in a mediation, in conjunction with the parties to the Securities Class Action, to try and resolve the Action. Prelim. Motn. at 10. Counsel for the Delaware Plaintiff also attended this mediation, but, when it became clear that there would be no resolution of the Securities Class Action and, in turn, no way to properly assess damages in the derivative matters, counsel for the Delaware Plaintiff declined to further engage. The New Jersey Plaintiffs, on the other hand, entered into a premature settlement without sufficient information and now rush toward approval despite the Action having been previously stayed for nearly four years, likely because, if successful, they stand to receive a substantial attorneys' fee award in exchange.

In contrast to the New Jersey Plaintiffs' shoddy efforts, the Delaware Plaintiff followed well-settled Delaware law[7] and sent an inspection demand to CorMedix pursuant to Section 220 on August 6, 2025, demanding the right to inspect certain corporate books and records related to the facts giving rise to the Securities Class Action (the "Section 220 Demand"). After conducting an extensive review of the documents produced in response to the Section 220 Demand (the "Section 220 Production") and after the failed mediation, the Delaware Plaintiff commenced the Delaware Chancery Action on behalf of the Company, which included allegations based on the Section 220 Production. Defendants filed the Motion to Dismiss in the Delaware Chancery Action and are required to submit a brief in support of their motion by February 16, 2026.

In order to safeguard his interests, and the interests of all CorMedix stockholders, the Delaware Plaintiff submitted the Motion to Intervene in this Action on December 18, 2025 (ECF No. 30). After the Motion to Intervene was filed, the parties to this Action filed a Notice of Settlement (ECF No. 32). The parties to this Action then submitted the Motion for Preliminary Approval on January 19, 2026 (ECF No. 42). Counsel for the Delaware Plaintiff promptly submitted a letter to the Court on January 22, 2026, informing the Court that he intended to object to the Proposed Settlement (ECF No. 46).

## ARGUMENT

**I.    THE DELAWARE PLAINTIFF IS ENTITLED TO OBJECT TO PRELIMINARY APPROVAL OF THE SETTLEMENT**

Members of a proposed settlement class are entitled to oppose or object to the preliminary approval of a proposed settlement. *Glover v. Conn. Gen. Life Ins. Co.*, No. 3:16-cv-00827, 2024 U.S. Dist. LEXIS 158508, at *4 (D. Conn. Sept. 4, 2024) (allowing a member of a proposed

---

[7] *See Thieffry v. Waldis*, Case No. 17-7173, 2018 U.S. Dist. LEXIS 87577, at *14 (D.N.J. May 24, 2018) (recognizing that a Section 220 demand in the context of a derivative suit "is preferred.").

6

settlement class to submit an objection to preliminary approval of a class action settlement without having to seek leave to intervene); *In re Platinum & Palladium Commodities Litig.*, No. 10-cv-03617, 2014 U.S. Dist. LEXIS 96457, at *24-25 (S.D.N.Y. July 15, 2014) (same). Numerous district courts have adjudicated objections to class settlements at the preliminary approval stage. *See, e.g., In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 265 (2d Cir. 2011) (Straub, J., concurring in part and dissenting in part) (referencing district court's multiple "round[s] of preliminary approval briefing" and hearings); *see also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 25 & n.17 (E.D.N.Y. 2019); *Aliano v. CVS Pharmacy, Inc.*, No. 16-cv-2624, 2018 U.S. Dist. LEXIS 85986, at *4 (E.D.N.Y. May 21, 2018); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-md-1720, 2012 U.S. Dist. LEXIS 153637, at *36-37 (E.D.N.Y. Oct. 24, 2012); *Tuttle v. Audiophile Music Direct, Inc.*, No. C22-1081, 2023 U.S. Dist. LEXIS 42035, at *17 (W.D. Wash. Mar. 13, 2023); *Trombley v. Nat'l City Bank*, 759 F. Supp. 2d 20, 22 (D.D.C. 2011); *Glover*, 2024 U.S. Dist. LEXIS 158508, at *6. Notably, in several of those cases, the objector was, like the Delaware Plaintiff, the named plaintiff in a parallel pending action. *See Aliano*, 2018 U.S. Dist. LEXIS 85986, at *4; *Glover*, 2024 U.S. Dist. LEXIS 158508, at *3; *Tuttle*, 2023 U.S. Dist. LEXIS 42035, at *12; *Trombley*, 759 F. Supp. 2d at 22. Courts considering settlements of derivative actions "look[] to cases involving class action settlements under Rule 23(e) for guidance." *Lanham v. Katz*, No. 23-cv-00507, 2024 U.S. Dist. LEXIS 73027, at *6 (D. Colo. Apr. 22, 2024) (citing *Lloyd v. Gupta*, No. 3:15-cv-04183, 2016 U.S. Dist. LEXIS 96166, at *4 (N.D. Cal. July 22, 2016)).

Here, the Court should follow the guidance of other district courts in considering the Delaware Plaintiff's opposition to preliminary approval of the Proposed Settlement. As a stockholder of CorMedix, the Delaware Plaintiff has standing to oppose and object to preliminary

7

approval of the Proposed Settlement. As detailed herein, to allow the premature Proposed Settlement to proceed would be a waste of judicial and litigant resources and harmful to CorMedix.

II. **THE COURT SHOULD DENY THE PRELIMINARY APPROVAL MOTION TO ALLOW FOR A DECISION ON THE INTERVENTION MOTION AND MOTION TO DISMISS**

    A. *If the Court Enters an Order on the Intervention Motion in Delaware Plaintiff's Favor, Consideration of the Proposed Settlement Would Be Unnecessary*

The Intervention Motion, which was filed before the Proposed Settlement was even agreed upon, should be decided first. The Delaware Plaintiff filed the Intervention Motion on December 18, 2025, two days before the purported execution of the term sheet and filing of the notice of settlement. Prelim. Motn. at 10. The Intervention Motion, and briefs in support thereof, raise substantive and troubling issues regarding the adequacy of the New Jersey Plaintiffs' representation. This is further compounded by the New Jersey Plaintiffs' attempt to push through a rushed settlement without the relevant information.

The New Jersey Plaintiffs disregarded decades-old precedent encouraging stockholders to use the "tools at hand" to investigate potential derivative claims *before* filing a lawsuit,[8] rushing to file their respective complaints without first seeking books and records available under Delaware law. Then, immediately thereafter, the New Jersey Plaintiffs agreed to a stay of their cases until "the Securities [Class Action] is dismissed in its entirety," or "the motion to dismiss the Securities [Class Action] is denied." ECF Nos. 8, 20. After the motion to dismiss in the Securities Class Action was denied, the stay in the Action was lifted. But for months, the New Jersey Plaintiffs still did nothing. The New Jersey Plaintiffs then filed a consolidated complaint in the Action *without* investigating or including any of the documents from the Section 220 Production, even though the terms of the Stay Order permitted them access to these documents. In

---

[8] *Brehm v. Eisner*, 746 A.2d 244, 266 (Del. 2000).

contrast, the Delaware Plaintiff followed well-settled law and utilized Section 220 prior to bringing the Delaware Chancery Action. The Delaware Plaintiff has vigorously investigated and litigated the claims in the Delaware Chancery Action and should be afforded the opportunity to see those claims through without premature release.

The Proposed Settlement is further evidence of the New Jersey Plaintiffs' inadequacy. The New Jersey Plaintiffs acknowledge that their claims are predicated entirely on the allegations in the Securities Class Action. *See* ECF No. 20. Yet, the New Jersey Plaintiffs seek to settle without knowing whether those allegations will bear fruit. The New Jersey Plaintiffs cannot know what monetary harm CorMedix incurred, or will incur, resulting from Defendants' alleged federal securities law violations.[9] Simply put, after doing nothing for years, the New Jersey Plaintiffs' decision to front run the Securities Class Action by settling early for minimal corporate governance changes cannot be the result of informed decision making. For their part, Defendants are likely pleased to have negotiated and settled with the weakest link for the weakest possible relief.

There is absolutely no need for fast-track consideration of the Proposed Settlement. The New Jersey Plaintiffs' cases have been pending for over *four years*. No litigation has occurred because the parties to the Action have repeatedly agreed to stipulated stay orders pending the Securities Class Action. *See* ECF Nos. 8, 20 The Securities Class Action is ongoing with no resolution in sight. If this Action is inextricably tied to the Securities Class Action, why, after four years of inactivity, do the New Jersey Plaintiffs now seek to settle their Action before any resolution of the Securities Class Action? The New Jersey Plaintiffs offer no explanation in their Memorandum.

A decision on the Intervention Motion and Motion to Dismiss prior to deciding preliminary

---

[9] *See In re United Telecomms., Sec. Litig.*, 1993 U.S. Dist. LEXIS 4749, at *9.

approval of the Proposed Settlement on the merits is therefore critical. As demonstrated in the Intervention Motion and briefs in support, the Delaware Plaintiff is vigorously prosecuting his case in Delaware. The Delaware Plaintiff did not participate in the substantive settlement negotiations leading to the Proposed Settlement. The Proposed Settlement is Defendants' attempt to engage in a "reverse" auction by rushing to prematurely settle with the New Jersey Plaintiffs who have offered the path of least resistance. The Court should not let this happen.

### III. ALTERNATIVELY, SHOULD THE COURT CONSIDER THE PRELIMINARY APPROVAL MOTION NOW, THE COURT SHOULD DENY PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT

Should the Court decide the Preliminary Approval Motion without consideration of the Intervention Motion, it is critical that the Court apply the proper scrutiny[10] to the Proposed Settlement now—before substantial costs have been incurred disseminating notice to CorMedix stockholders.[11] Given the low value of the Proposed Settlement's benefits—the "give"—and the parties' inability to value the claims and release—the "get"—as well as the serious concerns of inadequate representation raised both herein and in the Intervention Motion, the Preliminary Approval Motion should be denied. If preliminary approval is granted, the settlement administration costs plus any awarded attorneys' fees would harm the Company.

---

[10] *See In re Synchronoss Techs., Inc. S'holder Derivative Demand Refused Litig.*, 2021 U.S. Dist. LEXIS 238014, at *15 ("In light of the unique characteristics of shareholder derivative actions, and the potential for abuse and collusion inherent in cases that involve large attorney's fee awards," the Court must "carefully review the settlement terms to examine whether the specific corporate reforms agreed to by the parties as settlement terms [] result in a fair settlement to the corporation.").

[11] In all events, the proposed notice of settlement is deficient because it makes no reference to the Intervention Motion or to the pending Motion to Dismiss in the Delaware Action. Should the Court preliminarily approve the Proposed Settlement before deciding the Intervention Motion, it is critical that these facts be included in the notice.

### A.     *The Proposed Settlement Seeks to Prematurely Release Claims Without Proof of Recoverable Damages*

The New Jersey Plaintiffs are fatally missing half of the relevant equation to settle this case, as they cannot possibly, or reasonably, ascertain the damages or value of the claims in the Action. The Securities Class Action, which the New Jersey Plaintiffs concede is inextricably linked to their case,[12] has not been resolved. The case is proceeding on its fourth amended pleading after surviving a motion to dismiss on the merits. There is no resolution in sight. Thus, there are no ascertainable damages. *See In re United Telecomms., Sec. Litig.*, 1993 U.S. Dist. LEXIS 4749, at *9 (holding that the amount of damages in a derivative case is "contingent upon the outcome of the pending [securities] class action," including "any judgment the company might be ordered to pay in the [securities] class action."). Without proof or evidence of the potentially recoverable damages—*i.e.,* the value of the claims and release—there is no basis for the Court to make an informed decision about how the value of the Proposed Settlement benefits (the "get") compares to the potential recoverable damages (the "give"). Allowing a settlement to proceed at this stage would be premature and detrimental to the Company and its stockholders.

To be clear, the New Jersey Plaintiffs submit no evidence of any actual or potential damages in the Action. There is no declaration, no damages report, no expert witness testimony, and no documents provided to substantiate the damages sustained by the Company. The New Jersey Plaintiffs' assertion that their decision to enter into the settlement was "well-informed" because of "confidential information exchanged before and during the mediation process regarding

---

[12] *See* ECF No. 8 at 3-4 (ordering, pursuant to a stipulation by the parties, that the New Jersey Action be stayed until the "Securities [Class Action] is dismissed in its entirety" or "the motion to dismiss the Securities [Class Action] is denied."); *see also* Stay Order at 4 (stipulating that "there is an overlap between the facts and circumstances alleged in the Derivative Actions and the Securities [Class Action], including the relevance of many of the same documents and witnesses").

the merits and defenses, insurance, indemnification, damages, and related matters" should be disregarded as vague and unsubstantiated. Prelim. Motn. at 17-18. The only non-public documents the New Jersey Plaintiffs cite to as part of their "review" prior to entering into the Proposed Settlement are the documents produced to the Delaware Plaintiff in response to his Section 220 Demand. *Id.* at 18. These are the same documents that the New Jersey Plaintiffs were entitled to pursuant to their Stay Order but, due to a lack of diligence, did not timely obtain. Despite this history, and the New Jersey Plaintiffs' criticism of the substance of these documents in their Opposition to Proposed Intervenor's Motion to Intervene (ECF No. 35 at 8), they now confusingly seek to rely on them in support of the Proposed Settlement.

      **B.**    *Allowing Preliminary Approval to Proceed and Notice to be Disseminated Would Waste the Court's and CorMedix's Resources*

"Nonparty shareholders must be given notice of a proposed settlement of a shareholder's derivative action." *Bell Atl. Corp v. Bolger*, 2 F.3d 1304, 1317 (3d Cir. 1993) (internal citations omitted). Notice of a proposed settlement must be given to shareholders in the manner that the Court orders. Fed. R. Civ. P. 23.1(c). In determining the appropriate notice method, courts consider whether such notice would be sufficient to reach the majority of outstanding stockholders. *See Bushansky v. Armacost*, Case No. 12-cv-01597, 2014 U.S. Dist. LEXIS 88072, at *19 (N.D. Cal. June 25, 2014). Largely due to the costs associated with disseminating notice, "it [is] appropriate to resolve the factual question of whether the proposed settlement in this case is, as [the Delaware Plaintiff] contend[s], a 'collusive reverse auction' before the parties engage in the extensive notice program described in their revised preliminary approval materials." *Tuttle*, 2023 U.S. Dist. LEXIS 42035, at *16.

Here, the parties' proposed notice plan would be costly to the Company and its stockholders. The New Jersey Plaintiffs contend that "CorMedix shall file a Current Report on

Form 8-K with the SEC, which shall include as attachments the approved settlement notice ("Settlement Notice") and the Stipulation and exhibits thereto; (ii) cause the publication of the Settlement Notice one time in *The Wall Street Journal* or *Investor's Business Daily*; and (iii) post the SEC Form 8-K with the Settlement Notice, Stipulation and exhibits thereto on the Investor Relations portion of the Company's website through the date of the Settlement Hearing." Prelim. Motn. at 33-34. It would be a waste of Company resources to proceed with notice of the premature Proposed Settlement at this stage.

## CONCLUSION

For the foregoing reasons, the Delaware Plaintiff respectfully requests that the Court deny the Motion for Preliminary Approval to allow for a decision on the Intervention Motion and Motion to Dismiss. In the alternative, should the Court decide the Preliminary Approval Motion on the merits at this time, the Delaware Plaintiff respectfully requests that the Court deny preliminary approval of the Proposed Settlement.

Dated: February 3, 2026

**OF COUNSEL:**

**GRABAR LAW OFFICE**
Joshua H. Grabar
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (267) 507-6085
Facsimile: (267) 507-6048
Email: jgrabar@grabarlaw.com

**RIGRODSKY LAW, P.A.**

/s/ Gina M. Serra
Gina M. Serra
225 Broadway, Suite 3707
New York, NY 10007
Telephone: (516) 683-3516
Facsimile: (302) 654-7530
Email: gms@rl-legal.com

*Attorneys for Delaware Plaintiff and Proposed Intervenor Robert Jhoe*

        Seth D. Rigrodsky
        Vincent A. Licata
        Leah B. Wihtelin
        225 Broadway, Suite 3707
        New York, NY 10007
        Telephone: (516) 683-3516
        Facsimile: (302) 654-7530
        Email: sdr@rl-legal.com
        Email: vl@rl-legal.com
        Email: lw@rl-legal.com

        *Attorneys for Delaware Plaintiff and Proposed Intervenor Robert Jhoe*